UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE CANNING,                    :
                                   :     Civil Action No. 11-1295(GK)
            Plaintiff,             :
                                   :
      v.                           :
                                   :
U.S. DEPARTMENT OF JUSTICE,        :
                                   :
            Defendant.             :

## MEMORANDUM OPINION

Pro Se Plaintiff George Canning ("Plaintiff"), brings this action against Defendant, Federal Bureau of Investigation ("FBI" or "Defendant"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is now before the Court on Defendant's Motion for Summary Judgment ("Def.'s Mot.") [Dkt. No. 30-1] and Plaintiff's Cross-Motion for Partial Summary Judgment ("Pl.'s Mot.") [Dkt. No. 46].

Upon consideration of the Motions, Oppositions, Replies, the entire record herein, and for the reasons discussed below, Defendant's Motion for Summary Judgment is **granted in part and denied in part** and Plaintiff's Cross-Motion for Partial Summary Judgment is **granted in part and denied in part**.

-1-

I.  BACKGROUND

A. September 29, 2007 FOIA Requests

On September 29, 2007, Plaintiff submitted a FOIA request to the FBI Washington Field Office ("WFO"). He sought twelve serial numbers and "any other serials containing references to or information about Paul Goldstein, Lyndon H. LaRouche Jr., and/or Jeffrey Steinberg" for items on a copy of a redacted FBI airtel that Plaintiff enclosed with his request.[1] Am. Compl., Ex. D. Mr. Canning attached privacy waivers from Mr. Goldstein, Mr. LaRouche, and Mr. Steinberg to his request.

The same day, Mr. Canning submitted a separate FOIA request to FBI headquarters ("FBI HQ") seeking: (1) the same material he requested from the WFO, (2) two documents declassified by the FBI prior to an Interagency Security Classification Appeals Panel ("ISCAP") review, and (3) any information regarding Mr. Goldstein, Mr. LaRouche, and Mr. Steinberg in airtel WMFO 196B-1918-364. Id., Ex. A. Defendant claims it has no record of receiving the FBI HQ request. Second Hardy Decl. ¶ 9 [Dkt. No. 30-3].

B. July 18, 2009 FOIA Request

On July 18, 2009, Mr. Canning submitted a FOIA request to the FBI HQ seeking documents declassified by ISCAP for three specific

_____

[1] In 2011, Defendant located an unredacted copy of the FBI airtel referenced in Plaintiff's request and used this version to locate responsive material. Second Hardy Decl. ¶ 27.

ISCAP appeals involving Plaintiff and Mr. Steinberg. Am. Compl., Ex. K. On December 22, 2009, Mr. Canning amended his request to seek an additional document related to a declassification review appeal filed by Mr. Steinberg. Id., Ex. P. Although the Government claims it had no prior record of Plaintiff's July 18, 2009 request, upon receiving Plaintiff's amendment, it opened a FOIA case and released responsive material. Third Hardy Decl. ¶ 10.

### C. December 31, 2009 FOIA Request

On December 31, 2009, Mr. Canning submitted a FOIA request to FBI HQ seeking information about suspected government surveillance of Mr. LaRouche's presidential campaign. Am. Compl., Ex. R. Again, the Government claims it had no official record of Plaintiff's request. See Third Hardy Decl. ¶ 5. Nonetheless, it referenced the FOIA request appended to Plaintiff's Amended Complaint to search for and process responsive records related to the request. Id. ¶ 6.

### D. Procedural History

Plaintiff instituted this action on July 19, 2011. The Government filed its pending Motion for Summary Judgment on December 21, 2012. On May 9, 2013, Plaintiff filed his Cross-Motion for Partial Summary Judgment. During the course of this action, the Court denied multiple Motions by Plaintiff to obtain

discovery. The Parties' Cross-Motions for Summary Judgment are now fully briefed and ripe for review.

## II. STANDARD OF REVIEW

FOIA cases are typically and appropriately decided on motions for summary judgment. Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys., 762 F. Supp. 2d 123, 130 (D.D.C. 2011); Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "The standard governing a grant of summary judgment in favor of an agency's claim that it has fully discharged its disclosure obligations under FOIA is well-established.... [T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983); see also Fed. R. Civ. P. 56(c).

The court may award summary judgment solely on the basis of "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

If the agency withholds any material on the basis of statutory exemptions, the agency's affidavits must also (1) "describe the

-4-

documents and the justifications for nondisclosure with reasonably specific detail;" and (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and must not be (3) "controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. C.I.A., 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. ANALYSIS

In response to Plaintiff's four FOIA requests, Defendant withheld material under FOIA Exemptions 1, 3, 7(C), 7(D), and 7 (E). Plaintiff objects to the sufficiency of Defendant's search, contests a number of the asserted FOIA Exemptions, and argues that certain information should be disclosed because it exists in the public domain. The Court will address each issue in turn.

### A. Sufficiency of the Search Conducted by the FBI

The purpose of FOIA is to "facilitate public access to Government documents" and "to pierce the veil of secrecy and to open agency action to the light of public scrutiny." McCutchen v.

U.S. Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994) (internal quotations omitted). In responding to a FOIA request, an agency is under an obligation to conduct a reasonable search for responsive records. Oglesby, 920 F.2d at 68. To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351. An agency may demonstrate the reasonableness of its search by submitting "[a] reasonably detailed affidavit." Oglesby, 920 F.2d at 68.

The Court "applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." Morley v. C.I.A., 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks and citation omitted). To prevail in a summary judgment motion, an agency is not required to search every system possible, but must show that it made a good faith effort that would be reasonably expected to produce all the requested information. See Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). Summary judgment for an agency is inappropriate only if the agency's responses "raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory...." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

In this case, the Court concludes that, as to each of Plaintiff's FOIA requests, the FBI's search was reasonably calculated to uncover the relevant documents. Three declarations submitted by David M. Hardy, the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division of the FBI, describe, in extensive detail, Defendant's search for documents responsive to Plaintiff's requests. See Second Hardy Decl.; Third Hardy Decl.; Fourth Hardy Decl. [Dkt. No. 64-1].

With regard to the September 29, 2007 request to the Washington Field Office, the Government initially located and processed the files visible on the partially redacted airtel that Plaintiff attached to his request. Second Hardy Decl. ¶ 43. The Government supplemented its processing efforts with search terms targeted to retrieve responsive information. Id. Concerning the redacted serial numbers that Plaintiff requested, Defendant searched for and found an unredacted version of the airtel, re-processed the clean version for release, and then located the specific files that Plaintiff requested. Id. ¶ 44. The Government also deployed targeted search terms to search its electronic surveillance ("ELSUR") indices for responsive material.[2] Id. ¶ 47.

---

[2] Defendant's ELSUR search terms included: "Executive Intelligence Review," "EIR," "Foreign Police Cooperation," "Goldstein, Paul Neil," "LaRouche, Lyndon Hermyle," "Steinberg, Jeffrey," and the date of

The Government adopted a similar approach with regard to Plaintiff's July 18, 2009 and December 31, 2009 requests. Although Mr. Canning had originally requested a blacked-out file in the FBI search slip that he attached to his December 31, 2009 request, the Government located an unredacted version in its files and processed the corresponding serial numbers for release. Third Hardy Decl. ¶ 28. Defendant also conducted ELSUR searches using targeted search parameters. By coordinating with its RIDS Department Review Committee liaison, the Government was able to locate all of the material requested by Plaintiff in his July 18, 2009 request. Id. ¶ 30.

The Court finds that the Government's efforts as to these FOIA requests were reasonably calculated to uncover all relevant documents and therefore adequate. See Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1005-06 (D.C. Cir. 2009). The Hardy declarations identify, with reasonable specificity, the "system of records searched and the geographic location of those files." Perry, 684 F.2d at 127. See Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 370 (D.C. Cir. 1980) (agency affidavit must denote which files were searched and reflect a systematic approach to document

---

birth and social security number for the targeted individuals. Second Hardy Decl. ¶ 47.

location in order to enable the appellant to challenge the procedures utilized).

Mr. Canning does not appear to dispute that the above measures were adequate to locate records responsive to his September 29, 2007 request to the Washington Field Office and his two 2009 requests. Instead, Plaintiff principally challenges the fact that Defendant did not conduct an independent search of the FBI HQ's files in response to his September 29, 2007 request to the FBI HQ. Pl.'s Mot. at 6. According to Plaintiff, Defendant blatantly ignored this request, disregarding Plaintiff's concern that documents located in the FBI HQ might materially differ from the records stored in the Field Office. Id. at 8. In response, the Government asserts that since Field Office files are copied to the FBI HQ, an independent search of the FBI HQ for the same materials would have been needlessly redundant. Def.'s Reply at 4 [Dkt. No. 64].

The Court agrees with the Government. It provided a reasonably detailed affidavit clarifying why it only searched its Field Office, and why a search of the FBI Headquarters for the same documents would be redundant and not likely to result in the location of additional responsive records. In the affidavit, the Government clearly explained the process in which each Field Office copied the contents of its files to the corresponding HQ division.

Second Hardy Decl. ¶ 46. Unsatisfied, Mr. Canning claims that some of the HQ documents may not be "in fact identical" because they might "include[] handwritten notations and ink-stamps" that could reveal additional information. Pl.'s Reply at 2 (emphasis in original). Plaintiff's purely speculative claims about the existence and discoverability of other documents do not overcome the presumption of good faith afforded to the agency's declarations. See Leopold v. Nat'l Sec. Agency, 118 F. Supp. 3d 302, 308 (D.D.C. 2015) (deferring to agency's declaration that explained why a search of an additional government office would be redundant).

Nonetheless, Mr. Canning correctly points out that his FBI HQ request is not identical to the Field Office request. The FBI HQ request contains two elements absent from the Field Office request: (1) specific documents declassified by the FBI prior to the ISCAP review, and (2) any information regarding Mr. Goldstein, Mr. LaRouche, and Mr. Steinberg in airtel WMFO 196B-1918-364. See Am. Compl, Exs. A, D.

Despite initially having no record of Plaintiff's FBI HQ request, Defendant searched for the requested information and released responsive material in response to Plaintiff's Cross-Motion for Summary Judgment. Fourth Hardy Decl. ¶ 12. Defendant not only released an unredacted copy of airtel WMFO 196B-1918-364

but also searched for the specific documents declassified by the FBI prior to the ISCAP review, as requested by Mr. Canning. Second Hardy Decl. ¶ 16 n.7; Fourth Hardy Decl. ¶ 12. Defendant initiated a manual search of available files, searched FOIA files indexed to Plaintiff, and ran targeted key word searches across its internal database using the applicable ISCAP serial number. Fourth Hardy Decl. ¶ 12. Plaintiff, however, argues that Defendant should have used additional search terms, including the FBI reference number and the DOJ Office of Information and Privacy's reference number. Pl.'s Reply at 3 [Dkt. No. 65].

Plaintiff's argument is not convincing. "A FOIA petitioner cannot dictate the search terms for his or her FOIA request." Bigwood v. U.S. Dep't of Def., 132 F. Supp. 3d 124, 140 (D.D.C. 2015). Where, as here, the agency's search terms are reasonable, "the Court will not second guess the agency regarding whether other search terms might have been superior." Liberation Newspaper v. U.S. Dep't of State, 80 F. Supp. 3d 137, 146 (D.D.C. 2015).

Significantly, Mr. Canning does not explain why the search terms he proposes are more likely to uncover responsive information than the search terms the Government used. Plaintiff requested documents related to an ISCAP review and a search using the corresponding ISCAP serial number, which the Government used, is a logical way to target that information. The Court finds

-11-

Defendant's search methods to be reasonable and, absent a showing of bad faith, the Court will not second guess Defendant's search process.

Because the Court finds that Defendant has adequately explained its search protocols in multiple declarations that are entitled to a presumption of good faith, and that the protocols used were reasonable, Defendant's motion for summary judgment on this issue is **granted**.

### B. Claimed Exemptions

Plaintiff objects to Defendant's withholding of certain information based on various statutory exemptions. FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. U.S. Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. § 552(a), (b)). An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision, Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and must submit an index of all materials withheld. Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). In determining whether an agency has properly withheld requested documents under a FOIA exemption, the district court

conducts a de novo review of the agency's decision. 5 U.S.C. § 552(a)(4)(B).

As with claims of inadequacy of the search, the court may award summary judgment as to withheld records solely on the basis of information provided in affidavits or declarations when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project, 656 F.2d at 738. As noted above, such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., 926 F.2d at 1200 (quoting Ground Saucer Watch, 692 F.2d at 771).

### 1. Exemption 1

FOIA Exemption 1 precludes disclosure of documents that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

As with all of FOIA's exemptions, the burden of proof lies with the Government to show proper application of Exemption 1. 5 U.S.C. § 552(a)(4)(B). It is undisputed that the requirements for classifying information relevant to Mr. Canning's requests are contained in Executive Order 13526 which went into full effect in June 2010. Executive Order 13526 provides that information may be classified if:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13526, 75 FR 707, 707 (Dec. 29, 2009).

In this case, the Government has asserted Exemption 1 over certain classified material, including the identities of covert CIA employees and the location of covert CIA field installations. See Def.'s Mot. at 7, 32. Mr. Canning rests his Exemption 1 challenge on a claim that Defendant continues to assert Exemption 1 over material that has been previously declassified by ISCAP.

-14-

Pl.'s Mot. at 12. He identifies a specific document, a memorandum authored by Allen McCreight, to demonstrate that Defendant made Exemption 1 withholdings over portions of the document despite ISCAP's declassification. Id. at 23.

Although Mr. Canning may be correct that the Government cannot withhold declassified information under Exemption 1, the Court need not examine this issue further because in its Reply Motion, it agreed to release the portions of the McCreight memorandum that were declassified by ISCAP. See Def.'s Reply at 23. With this disclosure, the Government further declared that it reviewed the material and released all of the declassified information unless another exemption applies, see Fourth Hardy Decl. ¶ 25, an assertion that is entitled to a presumption of good faith. Negley v. F.B.I., 169 Fed. Appx. 591, 594 (D.C. Cir. 2006). In the absence of a showing of bad faith, the Court will defer to Defendant's declaration. See Ctr. for Auto Safety v. E.P.A., 731 F.2d 16, 23 (D.C. Cir. 1984) ("This Circuit has repeatedly held that 'when the agency meets its burden [under the FOIA] by means of affidavits, in camera review is neither necessary nor appropriate").

Plaintiff also objects to the adequacy of the FBI's and CIA's declassification reviews. Pl.'s Mot. at 24. He points to Defendant's supporting affidavits, noting that they do not specifically state: (1) that Defendant weighed the public

-15-

interest in disclosure against the national security interest; or (2) that Defendant submitted the classified intelligence source or method information to the Director of National Intelligence for declassification review. Id. at 25-26. Plaintiff therefore "infers [these steps] were not performed." Id.

Plaintiff's argument is unpersuasive for two reasons. First, Executive Order 13526 expressly indicates that the determination of whether the "exceptional case" exists in which "the need to protect [classified] information may be outweighed by the public interest in disclosure" is a matter of agency discretion. Exec. Order 13526 §3.1(d).

Second, Executive Order 13526 does not require Defendant to submit intelligence information to the Director of National Intelligence for declassification review as a matter of course. Instead, the Order merely states that the Director *may* declassify information upon consultation with the relevant department. See Exec. Order No. 13526 §3.1(c). Indeed, Mr. Canning appears to concede this point. See Pl.'s Mot. at 31 ("[F]rom...the word 'may' in the EO 13526 text, the DNI has discretion not to exercise his §3.1(C) authority – i.e. it is not a reviewable decision"). Finding that the withheld information was classified in accordance with the applicable procedural and administrative requirements of Exec.

Order 13526, the Court concludes that Defendant properly withheld the challenged classified material under Exemption 1.

While processing Plaintiff's FOIA requests, the Government identified documents that originated with other government agencies and, pursuant to 28 C.F.R. § 16.4, referred those documents to the appropriate agency for consultation. Def.'s Mot. at 16. The CIA and U.S. Army Intelligence and Security Command ("USAINSCOM") have also withheld classified material containing the identities of covert CIA employees, the location of covert CIA field installations, and other intelligence activities, sources, and methods under Exemption 1. Id. at 16-17, 22. The CIA and USAINCOM declare, with reasonable specificity, that the disclosure of such classified information would damage national security. Dorris Decl. ¶¶ 6-8 (Dkt. No. 30-13); Lutz Decl. ¶¶ 7-18 (Dkt. No. 30-14). Mr. Canning does not refute the CIA's or USAINCOM's statements or identify contradictory evidence in the record. Accordingly, the Court will defer to the detailed affidavits which indicate that the withheld information comports with the substantive and procedural requirements of Exec. Order 13526. Id.

### 2. Exemption 3

The Government contends that the CIA and the State Department properly withheld information pursuant to Exemption 3. Def.'s Mot. at 17-19. FOIA Exemption 3 covers records which are "specifically

exempted from disclosure by statute ... provided that such statute [requires withholding] in such a manner as to leave no discretion on the issue, or...establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); see also Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 582 (D.C. Cir. 1987). To satisfy FOIA's requirements, Defendant "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." Fitzgibbon v. C.I.A., 911 F.2d 755, 761-62 (D.C. Cir. 1990).

The CIA relies on two statutes – Section 102(A)(i)(1) of the National Security Act of 1947 ("NSA"), 50 U.S.C. § 403-1, as amended, and Section 6 of the Central Intelligence Agency Act of 1949 ("CIA Act"), 50 U.S.C. § 403(g), as amended – to justify non-disclosure of the withheld material. According to the CIA, the release of the withheld material would reveal the identities of covert CIA employees and the existence and location of covert CIA field installations. Lutz Decl. ¶ 20. The State Department points to Section 222(f) of the Immigration and Nationality Act ("INA") to withhold an agency telegram dated September 5, 1985 which pertains to the issuance of visas for three Soviet diplomats on a temporary duty assignment at the Soviet Embassy in Washington, D.C. Walter Decl. ¶¶ 5-6 [Dkt. No. 30-11].

As a threshold matter, Plaintiff does not dispute that the NSA, CIA Act and INA qualify as exemption statutes. Nor could he, considering the well-settled case law to the contrary. See, e.g., Fitzgibbon, 911 F.2d at 761 ("There is thus no doubt that section 403(d)(3) [now NSA section 403-1(i)(1)] is a proper exemption statute under exemption 3."); Nat'l Sec. Archive Fund, Inc. v. C.I.A., 402 F. Supp. 2d 211, 220 (D.D.C. 2005) (recognizing that section 6 of the CIA Act exempts certain material from disclosure); Medina-Hincapie v. U.S. Dep't of State, 700 F.2d 737, 741 (D.C. Cir. 1983) (concluding that INA section 222(f) qualifies as an exemption statute).

The CIA and State Department have adequately demonstrated that the withheld material falls within the exemption statutes. Section 102(A)(i)(1) of the NSA permits the CIA to withhold information relating to "intelligent sources and methods," 50 U.S.C. § 403-1(i)(1), and Section 6 of the CIA Act protects against the disclosure of the identities of CIA employees. 503 U.S.C. § 403(g). The CIA, in its declaration, explains that the withheld material contains the identities of covert CIA employees and the existence and location of covert CIA field installations. Lutz Decl. ¶ 20. Similarly, Section 222(f) of the INA protects agency records "pertaining to the issuance or refusal of visas," 8 U.S.C. § 1202(f), and the material withheld by the State Department

concerns visa issuances for three foreign nationals. Walter Decl. ¶ 8. Plaintiff does not challenge the agencies' analysis or conclusion. Accordingly, the Court concludes that the CIA and State Department properly withheld this material under Exemption 3.

### 3.    Exemption 7(C)

FOIA Exemption 7(C) protects information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether Exemption 7(C) applies, the Court must balance the public interest in disclosure with the privacy interests implicated by the release of the material. Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Suspects, witnesses, investigators, and third parties all have substantial privacy interests that are implicated by the public release of law enforcement investigative materials. Id.; Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Courts recognize that the disclosure of such material may lead to embarrassment and physical or reputational harm to these individuals. See SafeCard, 926 F.2d at 1205.

It "is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." Davis,

968 F.2d at 1282 (internal quotations omitted). Whether disclosure of private information is warranted under Exemption 7(C) turns on whether the information "sheds light on an agency's performance of its statutory duties." U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).

Thus, the requested information must shed light on the agency's own conduct and not merely on the subject matter of the underlying law enforcement investigation. Id. Our Court of Appeals has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard, 926 F.2d at 1206.

In this case, the Government has relied on Exemption 7(C) to protect the names and/or identifying information of: 1) third parties who were interviewed by the FBI during the course of investigations; (2) third parties mentioned in the documents in the released files; (3) FBI Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents; and (4) third parties who are of investigative interest to the FBI and/or other law enforcement agencies. Def.'s Mot. at

10-11, 29. According to the Government, the release of this information could subject the relevant individuals to harassment, embarrassment, intimidation, or legal, economic or physical harm. Id. at 11.

The Parties do not dispute that the records at issue were compiled for law enforcement purposes. Instead, Plaintiff and Defendant principally disagree on whether the public interest in disclosure outweighs the privacy interests implicated by the release of the material. According to Mr. Canning, the public interest in the withheld material is high, "certainly ris[ing] to the same level as Watergate" because the withheld material, he suspects, may show attempts made by the federal government to penetrate the presidential campaign of Lyndon LaRouche. Pl.'s Mot. at 27-33. The Government argues that no public interest would be furthered by the disclosure of the withheld information. Def.'s Mot. at 12.

The Government's withholding of the names of FBI personnel and third parties that are interviewed by the FBI, who are of interest to the Bureau, or mentioned in internal documents, clearly protects legitimate privacy interests. These individuals have a strong privacy interest because of the potential for harassment. Martin v. U.S. Dep't of Justice, 488 F.3d 446, 457 (D.C. Cir. 2007) ("[T]hird parties who may be mentioned in investigatory files and

witnesses and informants who provide information during the course of an investigation have an obvious and substantial privacy interest in their information.") (internal quotation marks omitted); Dunkelberger v. U.S. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990) ("Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.") (internal quotation marks omitted); Fitzgibbon, 911 F.2d at 768.

Mr. Canning contends that there is a strong public interest in the release of the names of these individuals because disclosure "may indicate whether the surveillance was of high-level officials (which may indicate attempts to suppress a campaign issue), or rank-and-file workers in La Rouche's presidential campaign[.]" Pl.'s Mot. at 33. As the FOIA requester, Plaintiff bears the burden of asserting a countervailing public interest in disclosure. Boyd v. Exec. Office for U.S. Attorneys, 87 F. Supp. 3d 58, 72-73 (D.D.C. 2015). Here, Mr. Canning offers nothing more than his own speculation to support his claim that government surveillance of Mr. LaRouche's presidential campaign took place. Such speculation does not constitute "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might

have occurred." Id. at 82 (upholding Exemption 7(C) claims where plaintiff offered only speculation as to government misconduct).

Mr. Canning further argues that disclosure of the information withheld under Exemption 7(C) is warranted because the Government did not indicate if it attempted to determine whether the individuals whose identifying information is being withheld are living or deceased. Pl.'s Mot. at 33-35. Plaintiff's argument has no validity. In a declaration supporting its Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendant explains that the FBI uses a "100-year rule" to discern the dates of birth or deaths of individuals involved in an investigation. Fourth Hardy Decl. ¶ 16. Under this rule, the FBI presumes dead (and releases the names of) individuals born more than 100 years ago.[3] Id. The Court of Appeals has considered the FBI's use of this method to determine the life and death of individuals mentioned in its withholdings and found it to be reasonable. See Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 665 (D.C. Cir. 2003).[4]

_____

[3] If the FBI is unable to determine the life or death status of an individual using this method, the agency presumes the individual to be alive and withholds any names and/or identifying information. Fourth Hardy Decl. ¶ 16.

[4] Plaintiff notes that Defendant redacted the name of Mitchell Werbel, a deceased individual. Pl.'s Mot. at 34. In response to Plaintiff's concern, Defendant released each instance where Mr. Werbel's name was mentioned in responsive records. Def.'s Reply at 17. Plaintiff has not indicated that Defendant's actions inadequately addressed his concern.

The Government also contends that U.S. Customs and Border Protection ("CBP") properly withheld the signature of a government employee from disclosure pursuant to Exemption 7(C). Def.'s Mot. at 19. The Court agrees. As explained above, the employee retains a privacy interest in his or her identity and Plaintiff has not offered any argument that a countervailing public interest warrants disclosure.

For these reasons, the Court finds that the Government properly withheld the challenged material under Exemption 7(C).[5]

### 4.    Exemption 7(D)

FOIA Exemption (7)(D) allows an agency to exempt records or information compiled for law enforcement purposes where such information "could reasonably be expected to disclose the identity of a confidential source ... which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). To invoke this exemption, an agency must show either that the source spoke only under express assurances of confidentiality or that the circumstances support an inference of confidentiality. U.S. Dep't of Justice v. Landano, 508 U.S. 165, 174 (1993).

---

[5] Defendant also generally asserts Exemption 6 in conjunction with its Exemption 7(C) claims. Because the Court has already concluded that Defendant has properly withheld the same information under Exemption 7(C), it need not examine Exemption 6. See Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

The Government has asserted Exemption 7(D) over: (1) confidential informant file numbers; (2) confidential source symbol numbers and FBI code names; (3) certain information provided by confidential source symbol numbered informants who reported information to the FBI on a regular basis under express assurances of confidentiality; (4) identities of and information provided by foreign law enforcement agencies under an implied assurance of confidentiality; (5) identities of and information provided by foreign law enforcement agencies under an express assurance of confidentiality; (6) names, identifying information, and information provided by third parties to the FBI under an implied assurance of confidentiality; and (7) the name or identifying information of a third party who assisted the FBI under an express assurance of confidentiality. Def.'s Mot. at 14, 30.

Mr. Canning initially moved for summary judgment regarding only the information for which the Government asserts an implied confidentiality exemption where the sources are not affiliated with law enforcement agencies. See Pl.'s Mot. at 36. However, after the Government more fully explained the basis for its Exemption 7(D) assertions in its Reply Motion, Mr. Canning withdrew his challenge over the documents being withheld under an implied promise of confidentiality. Pl.'s Reply at 6-7 ("Plaintiff

concedes defendant has now made the requisite factual showing, and this element of plaintiff's motion is no longer appropriate.").

The Court agrees with the Government that disclosure of the withheld material could potentially lead to the identification of confidential sources, endanger informants, affect the cooperation of future FBI informants, and diminish cooperation between the FBI and other law enforcement authorities. Accordingly, the Court finds that the Government properly withheld this material under Exemption 7(D).

## 5.    **Exemption 7(E)**

FOIA Exemption (7)(E) provides for the withholding of records or information compiled for law enforcement purposes to the extent that disclosure of such information could reasonably be expected to

> disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). This exemption protects from disclosure only those law enforcement techniques and procedures that are not well known to the public. National Sec. Archive v. F.B.I., 759 F. Supp. 872, 885 (D.D.C. 1991); Albuquerque Pub. Co. v. U.S. Dep't of Justice, 726 F. Supp. 851, 857 (D.D.C. 1989). Exemption 7(E)'s

requirement that disclosure could risk circumvention of the law

"sets a relatively low bar for the agency to justify withholding."

Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011). "To clear

that relatively low bar, an agency must demonstrate only that

release of a document might increase the risk that a law will be

violated or that past violators will escape legal consequences."

Pub. Emps. for Envtl. Responsibility v. U.S. Section, 740 F.3d

195, 205 (D.C. Cir. 2014).

The Government invokes Exemption 7(E) to withhold symbol

source numbers,[6] information concerning electronic monitoring

conducted by the FBI, internal FBI code names, and information

regarding law enforcement techniques that the FBI uses to obtain

intelligence in its investigations. See Second Hardy Decl ¶¶ 104-

05; Third Hardy Decl. ¶¶ 81-85. According to the Government, the

release of this information would, *inter alia*, hamper the FBI's

law enforcement efforts to detect and apprehend criminals,

compromise means of collecting intelligence information, and

enable criminal targets to better circumvent law enforcement by

developing countermeasures. Id. Plaintiff argues that Defendant

has not adequately shown that the underlying techniques are not

already known to the general public. Pl.'s Mot. at 39.

---

[6] Symbol source numbers are designators for specific methods used to
obtain invaluable investigative intelligence information. Third Hardy
Decl. ¶ 81.

-28-

As with the Government's Exemption 7(D) withholdings, the Parties do not dispute that the information the Goverment has withheld under Exemption 7(E) was compiled for law enforcement purposes. The categories of information that Defendant has withheld here — e.g., FBI code names, symbol methodology, and electronic monitoring techniques — fall squarely within the type of material envisioned by FOIA Exemption 7(E). The Court of Appeals has explained that the government's burden under Exemption 7(E) is to "demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law," and the Government's affidavits which outline, in detail, the anticipated harm that would follow should the material be disclosed, adequately meet this burden. See Mayer Brown LLP v. I.R.S., 562 F.3d 1190, 1194 (D.C. Cir. 2009).

Relying heavily on broad descriptions of law enforcement techniques that he has witnessed in movies and on television, Mr. Canning claims that the withheld information likely concerns well-known techniques such as consensual monitoring and wiretaps. Pl.'s Mot. at 41-42. Plaintiff's assertions, however, do not indicate that the specific material withheld in this case is in the public domain. Nonetheless, even if certain aspects of the techniques described in the withheld material are publically known, "even commonly known procedures may be protected from disclosure if the

disclosure could reduce or nullify their effectiveness." Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec., 852 F. Supp. 2d 66, 78 (D.D.C. 2012). Because the Court is persuaded that the disclosure of this material could reasonably be expected to risk circumvention of the law, it finds that Defendant has properly withheld this material under Exemption 7(E).

The Government also argues that the CBP properly withheld navigation codes from a CBP records system database ("TECS") under Exemption 7(E) because disclosure of the codes, which expose precise keystrokes and navigation instructions, would compromise the integrity of the CBP law enforcement database. Def.'s Mot. at 21. Plaintiff does not challenge Defendant's assertion. In its declaration, the CBP adequately explains how disclosure of this information could reasonably be expected to risk circumvention of the law. See Suzuki Decl. ¶¶ 20-23 [Dkt. No. 30-12]. The Court therefore concludes that Defendant properly withheld this information under Exemption 7(E).[7]

---

[7] Indeed, other courts in this District have reached the same result. See, e.g., Strunk v. U.S. Dep't of State, 905 F. Supp. 2d 142, 148 (D.D.C. 2012) (concluding that CBP's decision to withhold TECS-related information under Exemption 7(E) was proper); Skinner v. U.S. Dep't of Justice, 893 F. Supp. 2d 109, 112-13 (D.D.C. 2012) (finding the withholding of TECS internal computer access codes to be justified); Miller v. U.S. Dep't of Justice, 872 F. Supp. 2d 12, 29 (D.D.C. 2012) (same); McRae v. U.S. Dep't of Justice, 869 F. Supp. 2d 151, 169 (D.D.C. 2012) (same).

## C. Public Domain Material

Mr. Canning raises two public domain arguments, asserting that the Government cannot withhold certain information from disclosure because that information is already publically available.

First, Mr. Canning contends that the Government has withheld the names and identifying information of two individuals, Fred Lewis and Gary Howard, despite having previously identified them as sources, in response to Plaintiff's July 2009 FOIA request. See Pl.'s Mot. at 19. Because some information about these two individuals has already been disclosed, he argues, the Government "cannot properly withhold any information to shield the fact that [Lewis and Howard] provided information." Id. (emphasis in original).

Second, Mr. Canning alleges that certain information that the Government has withheld in response to his July 2009 request (the "Boston ELSUR Searches" documents) was previously released to a different FOIA requester, Mr. Steinberg. Id. at 20. For example, Mr. Canning claims Defendant released to Mr. Steinberg the name of the co-prosecutor in a Boston case regarding Mr. LaRouche yet withheld the same information in response to Plaintiff's request. Id. In response, the Government contends that Plaintiff has not met his burden to identify specific information in the public

domain that corresponds to the withheld material. Def.'s Reply at 13.

Mr. Canning's first argument is persuasive. The Court of Appeals has held that "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" Davis, 968 F.2d at 1279 (quoting Afshar v. U.S. Dep't of State, 702 F.2d 1123, 1130-34 (D.C. Cir. 1983) and Fitzgibbon, 911 F.2d at 765-66). In asserting a claim of prior disclosure, plaintiffs bear the burden of production to "point[] to specific information in the public domain that appears to duplicate that being withheld[.]" Id. Mr. Canning has met his burden here. He has identified specific material that has been officially disclosed to him by the Government — i.e., identifying information concerning Mr. Lewis and Mr. Howard — which duplicates the information the Government continues to withhold.[8] Accordingly, the Court concludes that Mr. Canning is entitled to this information.

Turning to Mr. Canning's second argument, the Court reaches the same conclusion. Whereas the Government released the identifying information concerning Mr. Lewis and Mr. Howard in

---

[8] Contrary to the Government's assertion, Mr. Canning does not request all information that the Government has in its possession concerning Mr. Lewis and Mr. Howard. Mr. Canning instead requests the withheld material demonstrating that these individuals provided information to the Government. Pl.'s Mot. at 19.

response to Mr. Canning's own FOIA request, Mr. Canning has demonstrated that the Government previously released the Boston ELSUR information in response to Mr. Steinberg's FOIA request. Fifth Canning Decl., Ex. C. The Government has not explained why the identity of the FOIA requester should affect the Court's analysis. In both instances, the material has been previously released to the public, a fact that warrants the disclosure of withheld information in this case. Accordingly, the Government shall disclose to Mr. Canning: (1) the names and identifying information concerning Mr. Lewis and Mr. Howard in the withheld material, and (2) the information contained in the Boston ELSUR documents that the Government previously disclosed to Mr. Steinberg but continues to withhold from Mr. Canning.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment shall be **granted in part and denied in part** and Plaintiff's Cross-Motion for Partial Summary Judgment shall be **granted in part and denied in part.** An Order shall accompany this Memorandum Opinion.

June 5, 2017

Gladys Kessler
United States District Judge

-33-